1-7-1529 Phillips v. Wang, again. Please proceed. Good morning and may it please the court. My name is Arianna Evers and I represent the appellant Phillips Lighting. I'd like to reserve three minutes for rebuttal. The board made two legal errors in this case. First, the board misconstrued the optical means term and the board also misconstrued the retaining element term. I'm turning first to the optical means term. I'd like to focus... Can you address right directly columnator 23 in figure 2? Why does that not show a not symmetrically lateral structure that would have to be part of the structure for the 1-2-0-6? It does show a symmetrically lateral surface. That's because if you were to take a cut through the center of the object, you're going to end up with an object that's the same shape on either side and the same length. That's the case with columnator 23. You'll note in the specification it does talk about rotational symmetry. This very, very brief written description, I believe, uses forms of symmetry, the word symmetry, twice. Once with respect to figure 2, which says this columnator has no rotational symmetry. And then earlier on the prior page where it talks about the lateral symmetrical sidewalls. I guess what I'm wondering is why shouldn't we be thinking of the word symmetry in the same way both times? That is to say, rotational symmetry, especially given that column 3 talks about columnator 4 has a symmetrical lateral surface 5 based on a parabolic or conical body of revolution. Body of revolution, as I understand it, is basically saying rotational symmetry. Not as I would understand it, Your Honor. When you're talking about the body of revolution, you're also talking about the area. That's why we're looking at the symmetry of the lateral surface. That's the symmetry of the sides. Again, slicing through the center of it, what you end up with is something that's illustrated very well, I think, in figure 1. The patent goes on to distinguish between that type of symmetrical lateral surface, the symmetry of the lateral surface, and rotational symmetry. Which basically just means that if you were to spin it about from the top, it's not going to look the same all the time. And that's what it's talking about with a rectangle. But that's different than when it is describing the symmetry of the lateral surface. What is it in column 3 that I can look at and give me some comfort that when it's talking about based on a parabolic or conical body of revolution, it's not talking about rotational symmetry at any point on the vertical access point of the collimator? Well, I think the very fact that it distinguishes between the two types of symmetry. If it were talking about rotational symmetry in column 3, it would have mentioned rotational symmetry. Can you tell me again, what's your version of symmetry here when it comes to symmetrical lateral surface? So the idea of symmetry would be that you have a shape, right, an object, and you take a cut through any vertical plane, so from any angle, and you're going to end up with something that's the same on either side. So the same shape and the same length. And that's why the Schirra reference does not anticipate. It very clearly has sides that are of a very different length. So that's the patentable advance. The prior art reference doesn't have that symmetrical, I don't know, mirror image like symmetry? Well, we're only talking about one limitation here. But, yes, that Schirra reference does not have this type of symmetry that's described in the patent. Do you have an expert or anything like that that describes what body of revolution means and why body of revolution means mirror image type symmetry as opposed to symmetrical, rotational symmetry? Dr. Teich offered examples in his declaration that show this exact sort of shape based on figure one where you have beams of light. That's right. He had some illustrations. Yes. And, Your Honor, he even testified during his deposition. This is something that WAC has pointed to, but his testimony is that there's multiple axes of symmetry. It's not just this type of symmetry that WAC would point us to, which is where you're just looking from the top of the object or you're taking a slice through it. And I just want to focus back on this language of the specification. What's important here is to look at what's actually disclosed in the specification and what is tied to the function. And that's here in the patent. It's the collimator four has a symmetrical lateral surface. And the patent goes on to say that it's the lateral surface five of the collimator four that causes the light emitted by the LED to be concentrated into the beam. And that's the very language pointing out the structure. And then this goes on to link the disclosed structure to the function. And this court has repeatedly stated in cases like Mettler Toledo and in assist technologies, which is cited by WAC, that structure disclosed in the specification is corresponding structure, only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim. Here opposing counsel made some argument that the functional language in the claim is a looser, broader concept than the function recited with respect to figure one here and the collimator four, where the collimator four's function, I guess, with other things, is to somehow concentrate all of the light into a focused beam or something like that. And then the actual claim language doesn't say it quite like that. It just talks about, what does it talk about? Guiding the light out of the housing or something. I'm not aware of any case that says that you need to use the exact language in your claim. What if the claim language is something much broader and diffuse conceptually than the actual functional language that's attached to the structure that you're pointing to as being the corresponding structure? I guess I'm wondering, what are we supposed to do under those kinds of circumstances? Well, you still need to find a link between a disclosed structure and functional language. And that's what we've pointed to here. And I think it's important to note that WAC hasn't pointed to any sort of linking language in the alternative. It merely just points to this generic collimator four, which upon a close recent reading of the specification, we know that that collimator four has a symmetrical lateral surface. And that's what is responsible for guiding the light. And this is the sort of trap that this court cautioned against in Donaldson, where it said that even though we're in the context of broadest reasonable interpretation, we still need to follow the statute because the statute suggests what is reasonable. It tells us what is reasonable. You have to construe the term according to what's disclosed in the specification. Is there some application of the broadest reasonable interpretation in trying to define what the corresponding structure is for purposes of a means plus function limitation? So here, I guess one could argue that the board maybe was faced with a choice. Do we go with a broader understanding of the corresponding structure, i.e., collimator? Four versus, hmm, maybe the collimator has a more specific attribute we need to identify for the corresponding structure. And so we will say collimator that has symmetrical sidewalls. But because we are applying the broadest reasonable interpretation, and let's say maybe both are reasonable choices, we're going to go with the broader concept of just a collimator, period. I'm not sure if this is that case. Here we have very clear mandatory language that it has a symmetrical lateral surface. I guess my question is not your case. I understand you care about your case, but just the question of what should the board do when it's applying broadest reasonable interpretation in the context of a means plus function limitation, when it's trying to identify what the corresponding structure is? So if there is an application for broadest reasonable interpretation and where there could be difference, I don't think it would be at this stage of the analysis, where the statute has told us you have to construe the term according to what is disclosed in the structure. Perhaps at an earlier stage, where we're trying to figure out what the function is, then maybe there would be a little bit more room for broadest reasonable construction. But I think once we get to this stage, we are told to follow the statute, and that is to look at what's in the specification and to see what the patentee actually disclosed. Here we have the purpose of the broadest reasonable construction, as this court has said in CUSO, is to encourage narrow claim drafting, to find what's narrow. But here, you already have a situation where the patentee has decided that it's going to take a narrow claim in exchange for claiming something in functional language. And so the board's analysis leaves us with a situation where we're actually interpreting the claim in a manner that is far too broad. Here we have a situation where it's effectively allowing any means for performing a claim function, which is the exact scenario that this court has cautioned against in cases like J&M Cropfield-Harley-Davidson, where it noted that the literal scope of a properly construed means plus function limitation does not extend to all means for performing a certain function. And so under the correct interpretation, the correct construction of optical means, one which would require a collimator with a symmetrical lateral surface, the Schirra reference simply cannot anticipate. I'll note this was not something that the board addressed under Phillips' construction, but if this court were to take that up, the court should find that there is simply no anticipation. Can you remind me, before the board, did you offer explanations of what symmetrically lateral meant? Was it an all or nothing, either symmetrically lateral was required as part of the construction or not? Well, yes, so it is required as part of the construction, it has to be symmetrically lateral. Right, but we've spoken here a little bit about what that might mean, whether it means rotational symmetry in around an axis so that any horizontal slice actually is a disk, or if it means something broader which you want to assert in order to capture something that is more like a football field shape, like collimator 23. Was there discussion of what this term symmetrically lateral meant in front of the board? Well, I believe that in Dr. Teich's expert declaration, he sets this out, he explains that in order to change the path of a beam of light, there needs to be something for it to reflect against. And so if you were to look at, I believe it's our reply brief at page 13, that's a perfect illustration of the concept that we're talking about. And that's why he testified that symmetry about multiple planes would characterize the lateral surface. And this is in a situation, again, where we have something that is even close to being symmetrical with the Schirra reference, none of the parties argued it was close, a very different shape. And I'd just like to move on, because my time is running out, to the retaining element limitation. WAC has argued in its red brief that this is somehow an issue of anticipation and not of plane construction. And I'll just quickly note that that's not how it was argued to the board. Neither WAC nor Phillips argued it as a question of anticipation. It's clearly one of plane construction, and certainly the board treated it as a plane construction issue. Okay, we'll save your remaining time for rebuttal. Let's hear from opposing counsel. Good morning. May it please the court, Tigran Vardanyan on behalf of WAC Lighting. I just want to make a high-level comment about both arguments, both with respect to optical means and with respect to retaining element Phillipses, arguing that we have to somehow, the court has to somehow impose this subjective concept of optimal performance or optimal efficiency in the analysis of both of the issues. Optimal performance or efficiency is not in the claim. The claim is written broader than that, and these are limitations that are outside of the scope. And that's really what we're battling here. The scope of the claim is just written broadly. And Phillips is trying to narrow it, obviously, to try to avoid the prior art. I agree with Ms. Evers with respect to the analysis that needs to be done concerning optical means. We have to look at the function first and determine what the function is. The function is agreed upon. We talked about it. Guiding the light emitted by the LED towards outside of the housing, shortly guiding light outside of the housing. It's not guiding the light optimally or, you know, with optimal efficiency. That's not the requirement. That's what actually Phillips is arguing based on the statements of its expert, right, in both of the briefs that Phillips has submitted. Nowhere Phillips is saying that collimator, that's, you know, specifically identified several different options of it in the specification. Nowhere they argue that the collimator cannot guide light outside of the housing. Is there some example of a collimator in the specification that lacks symmetrical or lateral symmetry if that phrase, lateral symmetry, is as broad as has been suggested, namely broader than rotational symmetry by spinning around an axis, a shape? I do not have a definitive answer for you, but I will try to answer it as best as I can. First, I want to point out with respect to the discussion that was happening before, and Judge Chen mentioned this rotational issue. The language that talks about symmetrical lateral surface in column A says symmetrical lateral surface based on a parabolic or conical body of revolution. So it's not, we shouldn't take that out of the context. I think that suggests it's a rotational symmetry. The example, the embodiment in Figure 2, talks specifically about not having that rotational symmetry. Not having rotational symmetry. Not having rotational symmetry. It doesn't say it lacks lateral symmetry. Correct. It doesn't say, well, it doesn't say it lacks symmetry, but it also doesn't say it has symmetry. But it says it has a rectangular top. It has a rectangular top. If we gather in Philip's view, the rectangular top would still have lateral symmetry. I'm not so sure, Your Honor, because you have heard Ms. Aver say that the length of the sides of the collimator would make a difference whether that's a symmetrical or not. In fact, that's actually what they're arguing with respect to Schirra. If you look at Figure 2, I don't know what the lengths of, you know, there's only two sides that are shown for the collimator. I don't know what the other two look like. I don't know what their lengths are. And, you know, that would be conjecture. I want to quickly shift to this idea, why are we even looking at symmetrical, right? What is symmetrical in the specification doing with respect to the function that's claimed specifically? I don't really see the link there, right? The specification actually links the collimator specifically to the function. It does it in optical means here, comprise a collimator in line 24. It goes on to do that in line 27. The optical means are formed by a full-body collimator. It specifically talks about line 37 in column 3. This light beam leaves the collimator by the front surface. That's the light leaving the housing. It also goes on in line 45 in the same column to say the collimator, in addition, comprises a cavity in this base provided for accommodating the LED. I'm not quite sure what your point is. In lines 36 to 37, it says the lateral surface of the collimator 4 causes the light emitted by the LED 2 to be concentrated into a beam. Correct. Is that not what the claim is talking about when it says guiding the light to go? It is not. You can concentrate the light beam, and if you don't have an outlet, it's just going to be there. It wouldn't leave the housing, right? And so at best, at best, that language could be shown as enabling as one of the steps. But there's an assist caseload that Ms. Evers mentioned and cited in her brief. It talks about merely enabling something isn't enough to include that structure, to make that the corresponding structure under municipal instructional analysis. So that language alone is not enough. It's not the linkage to guiding light outside of the housing. I want to switch back to the other argument, to the retaining alignment issue. First of all... I'm sorry, I'm still curious. I mean, are you making an argument that, in fact, there is no structure disclosed in the spec that corresponds for 1.126 purposes? Not at all. There is definitely structure disclosed, and that's the collimator. And I've pointed to several places in the specification in column 3 where it does that, in lines 24, 25. Where what it does is perform the function claimed in the claim. Yeah. So, again, there is a specific language here in line 37 that says this light beam leaves the collimator by the front surface. That's guiding light out of the housing. There's other language here that specifically says optical means collimator. So the board had plenty of reasons to say a collimator, not some generic collimator that exists outside in the world. It's not described in the patent. But there are several examples of a collimator in the patent, symmetrical and possibly not symmetrical, that are described in the patent. And the PTO basically decided that that's enough as a structure for this term. If you don't mind, I'll switch to the other issue, the retaining element issue. One of the things that is a little bit puzzling with this issue is that there's really actually no dispute. Phillips is not challenging the idea that we're dealing with a flashlight that you can unscrew a little bit. And as a result, the focus changes. You know, the light beam profile changes as a result of unscrewing the top of the, not entirely, just, you know, slightly unscrewing the top of the flashlight. But there's no challenge from Phillips that in a given position of rotation of that top, the position of the reflector or, you know, the optical means is not stable, is not accurate, you know, that it's moving. The reality is that there's actually support in the record in Shura, and the board actually credits it, that in the given position of the flashlight, there's enough pressure from the spring and from the structure of the flashlight that holds the reflector stable and, you know, functional. That issue isn't actually in front of us at all, and that really should be the, you know, Phillips' argument if it were one, but it's not. Instead, we're trying to argue this issue of re-arguing construction for retaining element of construction that was actually agreed to and entered by the board. Whether this is an anticipation argument or whether it's a clay construction argument is, I think we win both ways. I think it is an anticipation argument because, you know, if one reads the... Why don't you do the other version? We'll do the non-anticipation. I will point you to... So, the idea that there cannot be any... So, what is Phillips saying, right? There can be categorically no movement of the optical means in relation... No. There cannot be any movement of the optical means that is being fixed by the retaining means in relation to the LED. I will point you to examples in the patent where that happens. My favorite is with respect to Figure 2. And it starts at the bottom of 5, at the language that Judge Chen has already mentioned with respect to the rotational symmetry. But the heart of it, I think, is in column 6, starting at line 3. And just to step back a little bit. Figure 2 and that embodiment deals with these rectangular collimators, right? And I think that what basically is being described with respect to Figure 2 is that they move. Because they're rectangular, there's some movement. There's some play. The patent says, this rotation is even more unpleasant if the optical means have no rotational symmetry, which they don't, for the purpose of providing an output beam which also has no rotational symmetry. Said rotation would accordingly affect the photometric properties of the luminaire. So, why is this particularly important? Why is this my favorite? Because it actually also undermines this idea from Phillips of this optimal efficiency. Well, are shoulders 29 and 29B part of the retaining element here? They're not part of the retaining. Maybe that's what's holding or preventing the rotational movement. They don't. So, they don't do that enough. So, Figure 2 continues to say the rotation may be limited by shoulders, 29A and 29B provided on the housing. But it goes on to say, in the embodiment shown in Figure 2, to be clear, it's an embodiment. However, it is difficult to control the play present between the collimators 23 and shoulders 29A and 29B in the housing. And then it ends, I'll skip quickly. It ends with the idea that said rotation is accordingly only roughly limited. So, movement happens. Moreover, the patent and actual embodiment in the patent acknowledges that, you know, there won't be an optical efficiency with respect to the luminaire. And the movement is, you know, Phillips, I think, mentioned somewhere in the reply that the movement isn't in relation to the LED, but it is. Right? Every collimator that's rectangular is going to move around. The LED sits in the middle and the motion is going to be around. And because it's rectangular in shape as opposed to rotational, how it's going to affect the light is, you know, it's going to affect the light differently because it's not rotational. So, the geometry is different. The issue of movement is solved in embodiment that's discussed in Figure 3. Right? So, that's a separate one. You put basically spacers between these collimators that allows the motion to stop. So, that's just one example. There are actually other examples. If you care, in Column 2, there's talk about this translatory movement that happened and use of some material, low adhesion coefficient material. Line 25. It starts at 15 and goes on to at least line 40 and talks about an advantageous embodiment of the invention and, you know, goes on to talk about this use of low adhesion coefficient. It talks about the effect of the material of low adhesion coefficient, which may be, I'm at line 20, which may be polyethylene, is to facilitate relative translatory movements at the level of contact between optical means and either the retaining element connected to the housing or the elastic retention means. Anyway, so, there's ample support in the specification that motion is not something that's categorically disallowed. Inserting it into a construction that has been already agreed to isn't supported by the specification. Okay. Why don't we give Ms. Evers her rebuttal time. Thank you. Thank you. Just a few quick points, Your Honor. I find it curious that WACC is now pointing to the language in column three, the very language that it said in its red brief was irrelevant. And that's the actual linking language that we need to look to if we're going to figure out what the structure is that's disclosed for carrying out the claimed function. And I'll also point out that our claim construction isn't broader than rotational symmetry. These are two completely different concepts. Column area 23 lacks rotational symmetry, but it still has a symmetrical lateral surface as described in the patent. And it's not just a focus on the top. We're looking at the lateral surface. Now, as the retaining element limitation... This question may be incoherent, in which case I apologize. But does a rectangle have lateral symmetry in your view of lateral symmetry? This is the way I have to think about it. If you were to take a cut through the middle part from any angle, you're going to end up with something that's the same on either side, I believe. So it would have lateral symmetry in the way that the patent envisions it, but not when you're just looking from one angle. To turn to retaining element limitation, the construction... Can I just ask you a question about column 3? When it talks about column 8 of 4, it has a symmetrical lateral surface 5 based on a parabolic or conical body of revolution. Do you agree that not only is that, I guess, what you would call lateral symmetry, but it's also rotational symmetry when it's a parabolic or conical body of revolution? The cones and the parabolic, those are going to be rotationally symmetric, right? It's possible it would have both, and that's probably why the patent goes on to explain that at least in the case of the rectangular columnator, there's a different type of symmetry there. Quickly on the retaining element limitation, construction that Phillips is proposing is the only one that is consistent with what's actually disclosed in the patent. It's disclosed in how the patent talks about the invention. It's disclosed in the preferred embodiments, and it's consistent with the reasons why the patent explains that there's no movement. Just to go to one of the things that was mentioned, which is this figure 2 embodiment where there are multiple columnators. There's a reason why we have a division between the columnators, and that's because this is a completely different embodiment and it's concerned with different movement. The patent states that column 5, lines 21 through 25, that the increase in the number of LED lights... ...in case of state of emergency mission.